**Application of Samuel G. HARRIS.**
**Patent Appeal No. 9037.**

United States Court of Customs
and Patent Appeals.

Sept. 20, 1973.

Kemon, Palmer & Estabrook, Washington, D. C., attorneys of record, for appellant; Solon B. Kemon, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Raymond E. Martin, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Associate Judges, and ALMOND, Senior Judge.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the rejection of claims 5 and 6 of appellant's application,[1] on the basis of 35 U. S.C. § 103. Claims 1–4 of that application stand allowed.

### The Invention

The invention relates to aiming devices for firearms, optical instruments, parabolic microphones and the like. The nature of the basic invention is sufficiently indicated by claim 5:

5. In an optical aiming device of the type which projects a spot of light rearwardly of the device to be aimed and the user aims by keeping both eyes open, one eye seeing the light spot and the other eye seeing the target so that the spot is superimposed on the target, the improvement which comprises:

a light source of a first color embedded in a light gathering filter of a second color whereby under conditions of high ambient lighting intensity a light spot appears as said second color and under conditions of low ambient lighting intensity said light spot appears as said first color.

The specification states that while the human eye is most sensitive to light in the green range, the fact that aiming must often be done against green foliage precludes the use of that color for the light spot during daylight. In appellant's preferred embodiment, the light gathering filter, and thus the light spot, are red when ambient lighting is high, because red contrasts well with both green and blue backgrounds. Also in said embodiment the "light source of a first color" is green radioluminescent material, so that when ambient lighting is low (e. g., at dusk, or after dark) and that source thus becomes the primary source of light, the light spot appears green. Claim 6 is directed to that preferred embodiment.

### The Prior Art

The examiner rejected all of the claims under 35 U.S.C. § 103 as unpat-

---

1. Serial No. 821,177, filed May 2, 1969.

entable over patents to Holme[2] and Rickert et al. (Rickert).[3] The board reversed the examiner's rejection of claims 1–4, stating that "[t]he Rickert et al. apparatus and Holme apparatus operate in entirely different manners." The board sustained the rejection of claims 5 and 6 without reliance on the Holme patent. Therefore we need describe only the disclosure of Rickert.

Rickert is concerned with luminous reticles for rifle telescopes and similar instruments. One embodiment of the invention is shown in Rickert's Figure 1:

FIG. 1

[A7930]

2. U.S. Patent No. 2,488,541, issued November 22, 1949.

3. U.S. Patent No. 3,320,671, issued May 23, 1967.

Reticle illuminator 6 directs light through reticle 2, which has transparent or translucent lines or other indicia, one example being lines in the form of a sighting cross. The light rays from reticle 2 are reflected through the eyepiece from the semitransparent mirrored surface of beam splitter 30. Thus the viewer simultaneously observes the target image and the illuminated image from the reticle.

The operation of reticle illuminator 6 is described as follows:

An available incident light ray 3 is shown reflecting off of the angled ends 44 and 42 to illuminate the reticle 2. Another available incident light ray 5 is shown striking a fluorescent, phosphorescent or other so-called self-light particle 7 which then radiates its light.

Although many rays are given off by such a particle 7, for reasons of clarity, only two rays, 9, 11 of this radiation are shown, which rays are conducted by total internal reflection principles or reflective surfaces to pass through or illuminate reticle 2. Another ray from surface 44 might strike a self-light particle and act as did ray 5.

\* \* \*

In general the longer the illuminator the more light it will produce at the reticle end. Near maximum brightness is reached in bars or sheets which are five to seven inches long when commercial Plexiglas fluorescent yellow # 2086 is used. A bar as short as one inch is nearly as bright, however, if an angled end such as 44 is used to help direct the normally available overhead light toward the reticle end. \* \* \*

Because of the relatively high brightness produced by the fluorescent plastic called Plexiglas Yellow # 2086 and similar materials, and because of their economy, this type of illuminator material is described in some detail here as a suitable material. It is obvious, however, once our invention is understood, that the fluorescent optical material in the illuminator could be replaced by a different fluorescent color or by phosphorescent, radioactive, glow in the dark, or several other of the self-light materials, or the reticle 2 could be simply coated on the rear side with a thin coating of such material to illuminate the reticle indicia more directly. Such substitution, however, does not depart from the spirit of the invention. A combination of these self-light materials may be used as or in an illuminator. In some of these materials, intensity is gained when the higher frequency ranges of light strike the particle involved and it gives off a lower frequency range of light of greater intensity.

The board was of the opinion that Rickert suggested "the use of a filter material of a first color such as the 'Plexiglas Yellow # 2086' \* \* \* and further the use of a fluorescent or phosphorescent material embedded in the filter material which emits light of a second color." In the board's view such a combination would inherently produce different colors under different light intensities as called for by the claims. The board further took the position that "the choice of colors recited by claim 6 would have been obvious to one of ordinary skill in the art at the time of appellant's invention."

### Opinion

We agree with the board that the Rickert disclosure, particularly the statement that "[a] combination of these self-light materials may be used as or in an illuminator," suggests the use of illuminating materials having more than one color. While it may be that Rickert does not specifically enunciate the underlying concept of appellant's invention —different colors under different lighting conditions—the reference strongly suggests an illuminating system which clearly would provide that result. We think that Rickert fairly suggests a combination of "self-light" materials,

for example, in which illuminator 6 in Rickert's Figure 1 would be made of "Plexiglas Yellow # 2086" and contain particles of an additional "self-light" material, such as a radioactive material, which emits light of a color other than yellow. As in appellant's device, when the intensity of the ambient light decreases, the light emitted by the radioactive "self-light" particles would become a greater part of the total light provided and thus the color of that light would become more dominant. That is certainly consistent with the Rickert disclosure, one of the objects of the invention being to "provide an improved luminous reticle which can be more easily seen in dim light and poor background conditions, and in addition, be easily seen in very bright background conditions." We further agree with the board that the selection of the particular colors recited in claim 6 would have been obvious to the ordinarily skilled, and we note that appellant does not seriously argue for the patentability of claim 6 apart from claim 5.

The decision of the board is affirmed.

Affirmed.